**Ronald W. RITZ, Appellant–Defendant,**
v.
**INDIANA AND OHIO RAILROAD, INC., PSI Energy, and Cincinnati Bell Telephone Company, Appellees–(Third Party Defendants),**
v.
**BOARD OF COUNTY COMMISSIONERS OF FRANKLIN COUNTY, Indiana, Plaintiff.**

No. 24A01–9307–CV–218.

Court of Appeals of Indiana, First District.

April 14, 1994.

Rehearing Denied June 14, 1994.

Robert J. Delaney, Richmond, for appellant.

Lowell C. McMillin, Brookville, Michael A. Douglass, Liberty, John B. Scheidler, Plainfield, Edwin R. Acheson, Jr., Cincinnati, for appellees.

ROBERTSON, Judge.

Ronald W. Ritz appeals the entry of summary judgments in favor of the defendants on his third-party complaint to quiet title against the railroad to a ninety-five foot long section of land situated between tracts of real estate owned by Ritz and for trespass and takings by the public utilities. The railroad did not seek by cross-claim to have its title quieted. We affirm in part and reverse in part.

In September, 1990, the Board of County Commissioners of Franklin County initiated an action to appropriate and condemn an easement for additional county road right-of-way on portions of Ritz' real estate. The county road runs generally in a westerly direction from a junction with U.S. 52, where it crosses the railroad's right-of-way and then the Whitewater River, both of which generally run/flow at this location in a north-south direction. Ritz' real estate is located upon the north side of the county road and on either side of the railroad's right-of-way.

In connection with Franklin County's highway improvement project, third-party defendants Cincinnati Bell and PSI Energy entered into separate written agreements with Franklin County to relocate their utility facilities to the newly-condemned county road right-of-way abutting Ritz' real estate. PSI relocated four utility poles to the new county road right-of-way upon Ritz' real estate. PSI also cut down at least two trees.

As part of the same highway improvement project, Franklin County by agreement with the railroad and without condemnation also made improvements to the ninety-five foot strip which is the subject of Ritz' third-party complaint against the railroad. PSI owns and maintains a single utility pole on the disputed real estate. With PSI's permission, Cincinnati Bell attached overhead telephone wires to PSI's utility poles, including the single pole on the ninety-five foot strip.

Ritz complains that the installation of telephone wires by Cincinnati Bell and the acts of PSI constitute both a trespass and a taking of his property without just compensation. He alleges in his complaint against the railroad that he owns the disputed ninety-five

foot strip in fee, making no alternative claim of having acquired title by other means. Ritz' third-party complaint describes the parcel at issue only generally as a "tract of ground between Tract No. 7 and Tracts No. 8 and 9," tracts which are fully described in the county's complaint, "being approximately 95 feet in width ( [ + / − ] 5 feet), being 69.3 feet on the northeast side where adjacent to Tract No. 7 and 74.47 feet on the southwest side where adjacent to Tracts No. 8 and 9."

■ On appeal from the grant or denial of summary judgment, we use the same standard in ascertaining the propriety of summary judgment as does the trial court. *Newhouse v. Farmers National Bank of Shelbyville* (1989), Ind.App., 532 N.E.2d 26, 28. Summary judgment is appropriate only when the evidentiary matter designated by the parties shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ind.Trial Rule 56(C). No judgment rendered on the motion shall be reversed on the ground that there is a genuine issue of material fact unless the material fact and the evidence relevant thereto shall have been specifically designated to the trial court. T.R. 56(H). The movant bears the burden of establishing the propriety of summary judgment, and all facts and inferences to be drawn therefrom are viewed in a light most favorable to the non-movant. *Newhouse*, 532 N.E.2d at 28. On appeal, the party which lost in the trial court has the burden of persuading the appellate tribunal that the trial court's decision was erroneous. *Oelling v. Rao* (1992), Ind., 593 N.E.2d 189.

### Ownership of Ninety-five Foot Parcel

■ In a suit to quiet title, the plaintiff is bound to prove that he was the owner of the land in controversy at the commencement of the action. *Freson v. Combs* (1982), Ind.App., 433 N.E.2d 55, 61. To succeed, Ritz must recover on the strength of his own title. *Kozanjieff v. Petroff* (1938), 215 Ind. 286, 291–2, 19 N.E.2d 563; *Combs*, 433 N.E.2d at 61; *Coons v. Baird* (1970), 148 Ind.App. 250, 265 N.E.2d 727, 730. It is not sufficient that the evidence show the railroad to be without title; the evidence must affir-

matively show title in Ritz. *Petroff*, 215 Ind. at 291–2, 19 N.E.2d 563. Moreover, where the plaintiff specifically describes the title upon which he relies, recovery must be on title as laid. *Combs*, 433 N.E.2d at 61. Therefore, having alleged that he holds title in fee, Ritz may not succeed by proving he has acquired title by adverse possession.

■ Ritz premises his claim of title upon a warranty deed by which title in fee simple was conveyed to him to a five acre tract. Ritz made the warranty deed part of the material he designated in opposition to the railroad's motion. Ritz claims that the disputed strip is included in this five acre tract and points to the legal description of the land conveyed which shows that the conveyance is made subject to "the right-of-way of the Big Four Railroad." The parties do not dispute that the defendant is the only railroad in the vicinity, and the evidentiary materials supplied and made part of the designated evidentiary materials by PSI establish that the real estate owned by Ritz is divided by the defendant railroad. The designated evidentiary materials thus permit a reasonable inference that the ninety-five foot strip is within the acreage intended to be conveyed to Ritz. Moreover, inasmuch as the public policy of this state does not favor the conveyance of strips of land by simple titles to a railroad for right-of-way purposes, whether by deed or condemnation, and an ambiguity as to the character of an interest or title will generally be construed in favor of the original grantors and against a fee, *Ross Inc. v. Legler* (1964), 245 Ind. 655, 659, 199 N.E.2d 346, the recitals of Ritz' deed presumptively show that Ritz' grantor intended to convey to him the ninety-five foot strip in fee subject to the defendant railroad's easement or right-of-way.

■ Record title is the highest evidence of ownership and is not easily defeated. *Estate of Mark v. H.H. Smith Co.* (1989), Ind., 547 N.E.2d 796, 800. Evidence of fee simple title establishes a prima facie case for quiet title. *Consolidation Coal Co. v. Mutchman* (1990), Ind.App., 565 N.E.2d 1074, 1081, *trans. denied; Otterman v. Hollingsworth* (1966), 140 Ind.App. 281, 285, 214 N.E.2d 189. Ritz' deed therefore constitutes

prima facie evidence of a good and valid title in fee simple. This being true, the burden of proving any defects that would render the deed void and thereby defeat Ritz' title, rests on the railroad. *Allen v. Gilkison* (1921), 76 Ind.App. 233, 238, 132 N.E. 12. The railroad must show it possesses a better or paramount title or right to possession than that of Ritz. *Otterman*, 140 Ind.App. at 285, 214 N.E.2d 189. Therefore, even though Ritz had no burden of production on the railroad's motion for summary judgment until the railroad had offered evidence tending to defeat his title as a matter of law, Ritz' warranty deed would be sufficient at trial to shift the burden of persuasion to the railroad to defeat his title.

The railroad sought to defeat Ritz' claim of title not by showing any defect in Ritz' title but by showing that it has superior record title to the parcel of land in question, its predecessor in title having acquired the land in fee from the White Water Valley Canal Co. In support of its motion, the railroad designated the Act of January 27, 1836, ch. II, 1836 Ind.Acts 6; the Act of January 20, 1842, ch. XXXVIII, 1842 Ind.Acts 37; the Act of November 16, 1865, ch. XXI, 1865 Ind.Acts 116; a warranty deed dated December 5, 1865, by which the White Water Valley Canal Company conveyed its interest in the canal property to the White Water Valley Rail Road Company and a transcription of that deed; a deed of conveyance from the White Water Valley Rail Road Company to the White Water Railroad Company, dated May 12, 1879; deeds of conveyance from the White Water Railroad Company to the Cleveland, Cincinnati, Chicago, and St. Louis Railroad Company, dated November 24, 1890, and December 17, 1913; a merger agreement entered into on December 18, 1981, between the Cleveland, Cincinnati, Chicago, and St. Louis Railroad Co. and the Penn Central Corp.; an agreed judgment entry dated October 14, 1983, passing title to the defendant Indiana and Ohio Railroad, with an attached United States Railway Association Valuation Map showing that which had been appropriated by defendant Indiana & Ohio Railroad Co, and two other deeds granting any railroad a right of way through all canal lands in Franklin County, dated May 5, 1863, and May 31, 1866, respectively.

A line of Indiana cases stands for the proposition that when the State seized land for the construction of the White Water Canal, the estate taken was the fee and that the fee was transmitted from the State to the canal company. *The Brookville & Metamora Hydraulic Co. v. Butler* (1883), 91 Ind. 134, 135; *City of Logansport v. Shirk* (1883), 88 Ind. 563, 568; *Cromie v. The Board of Trustees of Wabash & Erie Canal* (1880), 71 Ind. 208; *Nelson v. Fleming* (1877), 56 Ind. 310; *The Water Works Co. v. Burkhart* (1872), 41 Ind. 364, 374–5. No record of the manner by which the State appropriated the fee was required and it is presumed as a matter of fact that the proper conveyances had been executed so as to vest title in the State. *Nelson*, 56 Ind. at 319. However, only a fee to the canal itself could vest in the railroad for the right which the canal company had in the land adjoining the channel of the canal was an easement, and nothing more. *Butler*, 91 Ind. at 136. And, public easements predating acquisition of the fee by the State were not destroyed but revived upon the servient estate once the land was no longer occupied or used for the purposes of the canal. *Shirk*, 88 Ind. at 570.

Assuming momentarily that the railroad now occupies only the canal and not the land adjoining its channel, we cannot agree with the railroad that the White Water Valley Canal Co. necessarily conveyed the fee to all of the real estate in which it possessed the fee to the White Water Valley Rail Road. The December 5, 1865 deed reads in pertinent part as follows:

That the said party of the first part in Consideration of the Agreement and Covenants of the Said party of the Second part, and of the Sum of One Dollar ... does hereby consent that said party of the Second part (illegible) occupy, and use forever for Railroad purposes so much of the Real and Personal property of the said party of the first part together with its Rights of Way, and privileges (sic) as lies between the following points to Wit .. (sic) Beginning at a point in the County of Dearborn, where the White Water Valley Canal

crosses the State line of Ohio and Indiana near the Township of Harrison and extending (illegible) said Valley, through the Counties of Dearborn, Franklin, Fayette, and Wayne to the Northern termination of Said Canal at or near the Town of Cambridge City in Said Wayne County, which Canal together with the Lands, rights of way, bridges ... and other appendages and appurtenances, form a part of the property, real and personal of Said party of the first part, hereafter granted and conveyed and of which use and possession is hereby given (illegible) for the purpose of consummating an Arrangement heretofore entered into ... [The party of the first part] does hereby Grant, Convey, Confirm and Warrant the property, rights of way, and privileges aforesaid to the Said party of the Second part, the White Water Valley Rail Road Company, their Successors and Assigns forever, to occupy and use the Same for the purposes aforesaid as fully as the Said party of the first part is authorized by the Said Act, of Said Legislature or has other lawful right to .grant and convey the same, provided that this Grant or Conveyance, shall not authorize or suffer the said grantee to impair the hydraulic power of said grantors or its lessees now in use nor shall this Deed grant or Convey to Said grantee, any feeder dams and feeders nor the right of way for water to run in Said Canal for hydraulic purposes as Supply present lessees of water power,, (sic) nor any Real Estate now leased to said lessees of Water power, but all of which is hereby retained and controlled by said party of the first part nor shall this Conveyance in any way impair the hydraulic power of Said party of the first part now in use, or the contracts now existing between the lessees of water power, and said party of the first part.....[1]

Apart from the question of whether the Canal Co. was empowered and did in fact convey anything in fee,[2] the Canal Co. plainly did not convey all of the real estate it had acquired from the State, having reserved to itself the real estate then leased to the lessees of water power as required by the legislation. The railroad did not offer any evidence tending to identify the real estate subject to the specified leases. Indeed, none of the earlier deeds offered by the railroad contain a specific description of the real property interests intended to be conveyed. While the failure to precisely describe the real property acquired does not render the conveyances void, *The Indianapolis, Peru and Chicago R.W. Co. v. Rayl* (1880), 69 Ind. 424, it is nonetheless impossible to determine the extent of the canal property conveyed or its specific location.

The railroad urges that Indiana courts may properly take judicial notice of the exact location of the canal and, apparently, that the railroad's remote grantor located the railroad line precisely on the canal property, without acquiring any additional interests or relocating its line. The law of judicial notice in Indiana does not permit us to take notice of such critical facts. While Indiana courts will take judicial notice of the location of geographic features in a general sense, their exact limits and boundaries have routinely been a matter of averment and proof. *See Grusenmeyer v. City of Logansport* (1881), 76 Ind. 549, 552. Even the fact that a railroad has a line running through a particular county is a matter which must be averred and proved. *Indianapolis & Cincinnati Railroad Co. v. Stephens* (1867), 28 Ind. 429. Matters of fact may be subject to a reason-

---

1. The legislative enactment to which the deed refers provides in pertinent part:
   "That no such grant, lease, or conveyance shall be made by any such canal company of such feeder dams and feeders, and right of way for water to run in such canal for hydraulic purposes as supply present lessees of water power; nor of the real estate now leased to lessees of water power, but all of which shall be retained and controlled by the canal Board of Directors...."

2. The 1865 legislation which authorized railroad companies "to occupy and use for railroad purposes" required and the railroad accepted a conditional relinquishment from the canal company of its real and personal property. A failure to follow the conditions specified may be followed by a forfeiture of the estate of the company, even if it be a fee simple. *Cleveland, Columbus, Cincinnati and Indianapolis Railway Co. v. Coburn* (1883), 91 Ind. 557, 560.

able doubt as to their existence, and inasmuch as judicial notice of a fact takes the place of proof thereof, and is of equal force as proof, this court should exercise extreme caution in taking judicial notice of facts subject to proof, particularly where as here the facts sought to be judicially noticed are material ones. *See Town of Windfall City v. State ex rel. Wood* (1910), 174 Ind. 311, 92 N.E. 57 (Court refusing to take judicial notice that land in question forms boundary of town); *Halstead v. City of Brazil* (1925), 83 Ind.App. 53, 56, 147 N.E. 629 (court refusing to take judicial notice that described tract of land outside city limits); *Pittsburgh, Cincinnati, Chicago & St. Louis Railroad Co. v. Philpott* (1921), 75 Ind.App. 59, 127 N.E. 827 (refusing to take judicial notice that Arsenal Avenue a public street).

▇▇ The railroad maintains that we may consider its recorded "Right–of–Way and Track Map" dated June 30, 1915, to establish the location and extent of its interest, citing *Cincinnati, Richmond & Fort Wayne Railroad Co. v. The Cleveland, Cincinnati, Chicago & St. Louis Railroad Co.* (1919), 188 Ind. 230, 123 N.E. 1, which holds that where the width of a right of way may be of some importance or is questioned, and the instrument or deed thereto does not fix the width, the contemporaneous declarations and acts of the parties with reference to the same, as also subsequent acts if performed before a controversy arises, are admissible to fix such width. *Id.* at 235, 123 N.E. 1. This is an extension of the rule expressed in *The Indianapolis & Vincennes Railroad Co. v. Reynolds* (1888), 116 Ind. 356, 360, 19 N.E. 141, that the phrase "right of way" has no fixed legal meaning "as to its extent," the width of a right-of-way for a railroad, like any other easement, being a subject of contract, which when general or ambiguous and the intent of the parties cannot be ascertained, may be proven by extrinsic evidence. At best, however, the "Right–of–Way and Track Map" establishes that as of June 30, 1915, the railroad had appropriated, whether by conveyance or condemnation, nearly the full ninety-nine feet authorized by statute at the location in issue. The map does not purport to reflect how or when the railroad acquired its interests or even the nature of those

interests. It therefore sheds no light on the superiority of the railroad's title.

The evidence offered by the railroad does not establish that it ever owned the entire ninety-five feet at issue in fee. Genuine issues of material fact remain to be tried as to the railroad's interest. These issues of material fact were designated by Ritz for the trial court. R. 376–377. But, more importantly, the evidentiary material shows no defect in Ritz' title. Summary judgment should therefore not have been granted as to the Indiana & Ohio Railroad.

### Trespass and Taking by PSI and Cincinnati Bell

▇▇ Part of Ritz' trespass claim is that trees were unnecessarily cut within the county right-of-way without his consent and that PSI located one of its poles in such a manner as to interfere with the ingress or egress to the land adjoining the county's right of way. Indiana Code 8–20–1–28 authorizes public and municipally owned utilities to construct, operate, and maintain their facilities upon, along, under, and across any of the public roads, highways and waters outside of municipalities but directs a utility to review its plans with the county executive and restricts the removal of trees and the location of poles. However, the statute does not create a third party beneficiary contract or a cause of action for landowners when the statute is not strictly followed. *See Deetz v. Northern Indiana Fuel and Light Co.* (1989), Ind.App., 545 N.E.2d 1103. Administrative remedies are available to address these types of complaints. Moreover, a utility may utilize a public right of way without the consent of the servient landowner who claims that such a use is an additional burden and servitude to the fee which is subject to the easement for highway purposes. *Fox v. Ohio Valley Gas Corp.* (1968), 250 Ind. 111, 235 N.E.2d 168; *Deetz,* 545 N.E.2d at 1105.

▇▇ This analysis applies with equal force to Ritz' claims of trespass and taking in the area referred to by the parties as the railroad's right-of-way. Regardless of whether or not the railroad owned the fee, the designated evidentiary materials show no

dispute over whether the railroad has a right-of-way or has permitted the utilities to utilize its easement. No additional burden is cast upon the fee beyond that which was contemplated and paid for in the original taking. *See Fox,* 250 Ind. at 117–18, 235 N.E.2d 168 (relying upon the reasoning of *New York Central Railroad Co. v. Yarian* (1942), 219 Ind. 477, 39 N.E.2d 604) (electrical ·conduit placed under railroad's tracks which did not unreasonably interfere with the use of the servient estate imposes no additional burden upon servient estate; no basis for different rule for private ways where instrumentalities serve dominant estate only and where dominant estate is being used for purposes within the contemplation of the parties).

Ritz alleges however that PSI cut trees both inside and outside of the condemned county right-of-way and that many more than two trees were removed. Although Ritz has not stated specifically where the trees were located outside of the right-of-way, Ritz has offered evidence which raises a question of fact about the extent of PSI's cutting and the location of the trees which were removed. The precise location on his property is not a material fact for purposes of summary judgment.

PSI did not raise Ritz' failure to exhaust administrative remedies as a basis for dismissing the trespass claim, and hence, neither of the parties has had an opportunity to offer evidence or designate material issues of fact on the question. That being the case, we are inclined to agree with Ritz that, despite our duty to affirm on any theory or legal basis found in the record, *Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154, on the issues litigated, a genuine issue of material fact remains as to whether PSI trespassed upon that portion of Ritz' property which is not burdened by a right-of-way.

Summary judgment in favor of Cincinnati Bell is affirmed. Summary judgment in favor of PSI on the takings claim is affirmed, but reversed as to the trespass claim. Summary judgment in favor of the Indiana & Ohio Railroad is reversed.

NAJAM and STATON, JJ., concur.