In the

# United States Court of Appeals
## For the Seventh Circuit

No. 12-3338

PHILLIP JACKSON and DEBORAH JACKSON,

*Plaintiffs-Appellants,*

*v.*

BANK OF AMERICA CORPORATION;
COUNTRYWIDE FINANCIAL CORPORATION;
COUNTRYWIDE HOME LOANS, INC., doing business as
AMERICA'S WHOLESALE LENDER; MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC.; and
FEDERAL NATIONAL MORTGAGE ASSOCIATION,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District District of Indiana, Indianapolis Division.
No. 12-CV-79—**William T. Lawrence**, *Judge.*

ARGUED FEBRUARY 14, 2013—DECIDED MARCH 29, 2013

Before BAUER and KANNE, *Circuit Judges*, and ZAGEL,
*District Judge.*\*

---

\* The Honorable James B. Zagel of the United States District
Court for the Northern District of Illinois, sitting by designa-
(continued...)

KANNE, *Circuit Judge*. In April 2003 Phillip and Deborah Jackson applied for and obtained a $282,500 home mortgage refinancing loan with a 30-year fixed interest rate of 5.875% from Countrywide Home Loans, Inc. doing business as America's Wholesale Lender ("AWL"). (R. 27-2 at 75-87.) To secure the loan, the Jacksons granted AWL a mortgage on their home, which was duly recorded in Hamilton County, Indiana, in May 2003. (R. 27-2 at 118); (R. 27-2 at 24.) The Jacksons used a mortgage broker—Midwest Financial & Mortgage Services, Inc. ("MFMS")—to apply for the loan. (R. 27-2 at 120.) The Jacksons allege that the remaining defendant-appellees have been "involved with the mortgage process in various capacities." (Appellant's Br. at 8.)

The Jacksons were initially able to make timely payments on the loan but went into default in March 2010. (R. 27-2 at 121.) Although there was no foreclosure action taken by the banks at the time (nor has there been in the intervening time period), the Jacksons initiated an action to quiet title on the property in Hamilton County Circuit Court in December 2011. They additionally claimed that some or all of the defendants negligently evaluated the Jacksons' ability to repay the loan and that the loan contract was substantively and procedurally unconscionable. The defendants removed the

---

* (...continued)

tion. Judge Zagel heard oral argument in this matter and participated in the conference, but he did not participate in the issuance of the panel's opinion. The remaining two panelists issue this opinion pursuant to 28 U.S.C. § 46(d).

case to the Southern District of Indiana in January 2012 and, the next month, filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6). The Jacksons amended their complaint, but the district court granted the motion to dismiss on all counts in September 2012. *Jackson v. Bank of Am. Corp.*, No. 12-cv-79, 2012 WL 4052285 (S.D. Ind. Sept. 13, 2012).

The Jacksons timely filed this appeal, challenging the district court's dismissal of each of their three claims: negligence, unconscionability, and quiet title. We address each below and affirm the district court's dismissal.

## I. JURISDICTION

Before we address the merits, we must dispose of a brief jurisdictional issue. In an order dated December 20, 2012, we noted that the Jacksons' filings did not comply with Circuit Rule 28(a)(1) because they failed to establish diversity jurisdiction. (Dkt. 18.) We requested that the parties clarify whether and why our jurisdiction was appropriate. At issue was one defendant—MFMS—whom the Jacksons identified as an Indiana citizen.[1] As

---

[1] The additional wrinkle here: it appears that MFMS was never properly served and did not appear in the district court. MFMS is not a party to this appeal. Consequently, it is not listed as an appellee here. Because MFMS is not an Indiana citizen for diversity purposes, and federal jurisdiction is appropriate in any event, we need not follow this particular thread any further.

the Jacksons themselves are Indiana citizens, if MFMS was also an Indiana citizen, then complete diversity would be destroyed and federal jurisdiction would be improper. *See Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009).

In response, the Jacksons restated their "knowledge and belief" that MFMS is "incorporated in Indiana and its principal place of business is in Indiana." (Dkt. 22 at 2.) Thus, the Jacksons offered that it would be appropriate for this court to remand the case to the district court with instructions to send the case back to the Hamilton County Circuit Court, where it was initially filed. (*Id.*)

The defendants filed a docketing statement that attached records searches from both the Kentucky and Indiana Secretaries of State that show MFMS to be a Kentucky corporation with its principal place of business in Ohio. (Dkt. 14-2.) On this basis, we are confident that the requirements for diversity jurisdiction are satisfied. *See* 28 U.S.C. § 1332(c)(1); *see also Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 306 (2006).

## II. ANALYSIS

Our review of a district court's dismissal of a complaint for failure to state a claim is *de novo*. *Alexander v. McKinney*, 692 F.3d 553, 555 (7th Cir. 2012). When "[e]valuating the sufficiency of the complaint, we construe it in the light most favorable to the nonmoving party, accept well-[pled] facts as true, and draw all inferences in her favor." *Reynolds v. CB Sports Bar, Inc.*, 623

F.3d 1143, 1146 (7th Cir. 2010) (internal brackets omitted). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Because this is a diversity case, state substantive law applies. *Blood v. VH-1 Music First*, 668 F.3d 543, 546 (7th Cir. 2012). Here, the case was removed to district court in Indiana and neither party argued choice of law; therefore, Indiana law controls. *Ryerson Inc. v. Fed. Ins. Co.*, 676 F.3d 610, 611-12 (7th Cir. 2012). Our job in applying Indiana law is to "use our own best judgment to estimate how the [Indiana] Supreme Court would rule." *Blood*, 668 F.3d at 546. Where the Indiana Supreme Court has not spoken directly to an issue, we may give "proper regard" to Indiana's lower courts. *Comm'r v. Estate of Bosch*, 387 U.S. 456, 465 (1967); *Blood*, 668 F.3d at 546.

## A. Negligence

The Jacksons' first claim is that the various financial institutions they sued negligently evaluated the Jacksons' ability to repay the loan; specifically, the institutions used the Jacksons' gross income rather than net income to determine the likelihood of repayment. The elements of a negligence claim in Indiana would be familiar to most first-year law students: "'(1) a duty owed to plaintiff by defendant, (2) breach of duty by

allowing conduct to fall below the applicable standard of care, and (3) a compensable injury proximately caused by defendant's breach of duty.'" *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 635 (7th Cir. 2007) (internal emphasis removed) (*quoting Bader v. Johnson*, 732 N.E.2d 1212, 1216-17 (Ind. 2000)). The Jacksons cannot advance beyond the first element. They cannot show that the defendant-appellee institutions actually owed them a duty; without a duty, there is no cognizable negligence claim. *See Bader*, 732 N.E.2d at 1216-17. Accordingly, the district court's dismissal of the claim was appropriate.

The Jacksons argue that the financial institutions owed them a "fiduciary duty." (Appellants' Br. at 10.) The Jacksons, however, have not cited any law (of Indiana, or any other jurisdiction) for this proposition; they have argued only that they "disagree[d]" with the appellees and "respectfully" disagreed with the district court's conclusion that no such duty exists. (*Id.*) However, it is clear under Indiana law that a fiduciary duty does not arise "between a lender and a borrower unless certain facts exist which establish a relationship of trust and confidence between the two." *Block v. Lake Mortg. Co.*, 601 N.E.2d 449, 452 (Ind. Ct. App. 1992); *see also Am. Heritage Banco, Inc. v. Cranston*, 928 N.E.2d 239, 246 (Ind. Ct. App. 2010) ("the mere existence of a relationship between parties of bank and customer or depositor does not create a special relationship of trust and confidence."); *Huntington Mortg. Co. v. DeBrota*, 703 N.E.2d 160, 167 (Ind. Ct. App. 1998) ("Mortgages do not transform a traditional debtor-creditor relationship into a fiduciary relationship absent an intent by the

parties to do so."). "Although the existence of a confidential relationship depends upon the facts of each case, it can be generally stated that a confidential relationship exists whenever confidence is reposed by one party in another with resulting superiority and influence exercised by the other." *DeBrota*, 703 N.E.2d at 167. Here, the Jacksons have not alleged anything more than the typical mortgagor-mortgagee relationship. But, a mortgage contract does not, on its own, create a confidential relationship between a creditor and a debtor. *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 693 (7th Cir. 2011). Without a relevant duty, there is no tort. The district court properly dismissed the Jacksons' negligence claim.

## B. Unconscionability

The Jacksons' second claim is that the mortgage contract they entered into was unconscionable and should be set aside. In Indiana, an unconscionable contract is one that "no sensible man not under delusion, duress or in distress would make, and [that] no honest and fair man would accept." *Weaver v. Am. Oil Co.*, 276 N.E.2d 144, 146 (Ind. 1971). Although Indiana recognizes unconscionability, courts do not regularly accept it as an argument; we have previously described Indiana as "unfriendly" to unconscionability generally. *Amoco Oil Co. v. Ashcraft*, 791 F.2d 519, 522-23 (7th Cir. 1986) (collecting cases). Under Indiana law, a contract may be substantively unconscionable, procedurally unconscionable, or both. *DiMizio v. Romo*, 756 N.E.2d

1018, 1023 (Ind. Ct. App. 2001). The Jacksons, however, failed to allege facts that would support any unconscionability determination in Indiana. Accordingly, the district court also properly dismissed this claim.

"Substantive unconscionability refers to oppressively one-sided and harsh terms of a contract." *Id.* This is particularly likely where the consumer "is not in a position to shop around for better terms." *Terry v. Ind. State Univ.*, 666 N.E.2d 87, 93 (Ind. Ct. App. 1996). The Jacksons alleged neither any particularly unfair terms, nor that they were unable to shop around. The terms of their loan were manifestly conventional: a 30-year fixed rate loan at 5.875% interest. The Jacksons also used a mortgage broker—an individual who sorts through multiple loan options from various lenders. The Jacksons even paid their mortgage for seven years before their circumstances changed, which suggests that the terms were not unconscionably oppressive. Thus, nothing in their alleged facts supports a claim of substantive unconscionability.

Nor does the complaint state a claim for procedural unconscionability. "Procedural unconscionability issues arise from irregularities in the bargaining process or from characteristics peculiar to one of the parties." *DiMizio*, 756 N.E.2d at 1024. "[P]hysical or mental incapacity" that prevents a party "from appreciating the significance" of the agreement is one example of a characteristic that might give rise to an unconscionable process. *Ashcraft*, 791 F.2d at 522. Unequal bargaining power does not by itself, however, make a contract process unconscionable. *Id.*

Here, the Jacksons attempt to conjure an unconscionability claim out of circumstances they describe as fraud.[2] The Jacksons claim they lacked the "specialized knowledge required to evaluate whether the loan was in their best interest." (Appellants' Br. at 14.) As the district court described this argument, the Jacksons essentially contend "that they were unable to understand that the consequences of borrowing more than they could afford could be the loss of their home." *Jackson*, 2012 WL 4052285, at *3.

Again, we agree with the district court that nothing in this argument "rise[s] above a speculative level." *Id.* "Under Indiana law, a person is presumed to understand and assent to the terms of the contracts he signs." *Guideone Ins. Co. v. U.S. Water Sys., Inc.*, 950 N.E.2d 1236, 1247 (Ind. Ct. App. 2011). There is nothing in the record to indicate that the Jacksons did not understand the terms of their loan, or that the mortgage process itself was somehow irregular. The contention that the Jacksons did not understand the potential consequences of defaulting on their loan is similarly unsupported. The mortgage process was not procedurally unconscionable.

The Jacksons have not shown how this contract, which is so similar to untold numbers of other mortgage

---

[2] The Jacksons did not include a claim of fraud in their complaint but used the language of fraud in their brief to this court when describing their unconscionability claim. To the extent they now argue fraud as an independent claim, that argument has been forfeited. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 719-20 (7th Cir. 2012).

refinancing contracts, could possibly be one that "no sensible man not under delusion, duress or in distress would make, and [that] no honest and fair man would accept." *Weaver*, 276 N.E.2d at 146. Without facts that would support either substantive or procedural unconscionability, dismissal of this claim was also proper.

## C. *Action to Quiet Title*

The Jacksons' third and final claim is an action to quiet title. This claim is one that the Jacksons' counsel forth-rightly described during oral argument as an attempt to "cut new turf" in Indiana quiet title law. The Jacksons' arguments are indeed novel, but we are unconvinced that they constitute a valid quiet title action under Indiana law.

In Indiana, "[i]n a suit to quiet title, the plaintiff is bound to prove that he was the owner of the land in controversy at the commencement of the action." *Ritz v. Ind. & Ohio R.R., Inc.*, 632 N.E.2d 769, 772 (Ind. Ct. App. 1994). "The evidence must show title in the plaintiff; it is not sufficient that it shows that the adverse claimant is without title." *Kozanjieff v. Petroff*, 19 N.E.2d 563, 565 (Ind. 1939). If the plaintiff is successful, "an action to quiet title . . . cuts off all claims of the unsuccessful party." *Cent. Fed. Sav. & Loan Ass'n v. Cummings*, 25 N.E.2d 638, 639 (Ind. 1940).

Although there is no pending foreclosure, the Jacksons attempt to construct a quiet title action out of two legal theories that have been used with limited success in other jurisdictions to forestall immediate foreclosure

(but have not yet been raised, so far as we can tell, in Indiana under these precise circumstances): (1) that the bifurcation of the mortgage and the note (in order to package the latter into larger securities) prevents any party from claiming strong enough title to foreclose, *see Horvath v. Bank of N.Y., N.A.*, 641 F.3d 617, 622 (4th Cir. 2011); *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1044 (9th Cir. 2011); and (2) that no party could produce the original note, which should be required to properly foreclose, *see e.g., In re Marron*, 485 B.R. 485, 491 (D. Mass. 2012). To the extent that these theories have legs (a question very much in dispute), they might protect a debtor from foreclosure by a particular party at a particular time. *See Cervantes*, 656 F.3d at 1044 (describing plaintiffs' theory of wrongful foreclosure). They do not, however, "prove that [the plaintiff] was the owner of the land in controversy." *Ritz*, 632 N.E.2d at 772. As such, these theories are not sufficient to support a quiet title action in Indiana. *See Weathersby v. JPMorgan Chase Bank, N.A.*, 906 N.E.2d 904, 908-09 (Ind. Ct. App. 2009); *Otterman v. Hollingsworth*, 214 N.E.2d 189, 192 (Ind. Ct. App. 1966); *see also* Ind. Code § 32-30-2-15.

The Jacksons have not alleged facts that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. They have referred to a relevant Indiana statute: Ind. Code § 32-30-2-20. They have recited what they describe as factual allegations that are pertinent to a quiet title action in Indiana: that they possess the property, and that they own the property in fee simple. (R. 27-2 at 122-23.) However, "a plaintiff's obligation to

provide the grounds of his entitlement to relief requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal brackets and quotation marks omitted). "[C]ourts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotation marks omitted). Therefore, we need not credit the Jacksons' conclusory assertions for purposes of a motion to dismiss. *Iqbal*, 556 U.S. at 678-79. Moreover, we do not think it is the place of the federal courts to "cut new turf" for Indiana with regard to such a venerable cause of action. Dismissal of this claim by the district court was appropriate.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.