JULIA C. BRODERICK v. JAMES TYER.—187 S. W. (2d) 476.

Kansas City Court of Appeals. April 2, 1945.

*John J. Robison* and *Frank W. Armstrong* for appellant.

*Pross T. Cross, R. H. Musser* and *Gerald Cross* for respondent.

BLAND, P. J.—This is a suit in ejectment, wherein plaintiff seeks to obtain possession, from the defendant, of an abandoned railroad right of way, located in Clinton County, and being a part of the North One-half of the Northwest Quarter of Section 20, Township 56, Range 31, West. A jury was waived and the case was tried before the court, resulting in a judgment in favor of plaintiff for the possession of the land in controversy, $1.00 damages, $100 rents and profits, and a finding that the value of future rents and profits was $3.00 per month. Defendant has appealed.

The agreed statement of facts entered into by the parties at the trial shows that a warranty deed executed by the Hannibal and St. Joseph Railroad Company to Nathan P. Ogden and Thomas E. Turney is a common source of title. In this deed the Railroad Company conveyed to Ogden and Turney sometime prior to the 4th day of April 1873, a fee simple title to the North half of the Northwest Quarter of the section in question. On the 4th day of April 1873, Ogden and Turney executed a deed to the Chicago and Southwestern Railway Company, conveying "A part of the Northwest Quarter of Section Twenty (20) in Township Fifty-six (56) North of Range Thirty-one (31) West, more particularly described as follows, to-wit: A strip of land one thousand and five hundred (1500) feet in length and two hundred (200) feet in width, being one hundred (100) feet on each side of the center line railroad of said company as located: The east line of said strip of land being nine hundred and twenty-four (924) feet from the point where the center line of said railroad crosses the East line of said Northwest Quarter of Section Twenty (20). But this conveyance is made and accepted upon condition that the said Chicago and South Western Railway Company shall forever maintain a Depot and Railroad Station (at the town of Perrin) upon the tract of land hereinbefore described, and that if said Railway Company its assigns shall at any time fail to maintain such Depot and

Railroad Station, then the title to the land hereby conveyed shall immediately revert to and rest in the Grantors herein and their heirs as fully to all intents and purposes as though this conveyance had never been made.''

The recited consideration in the deed was the performance of the conditions mentioned therein and the sum of One Dollar.

The agreed statement of facts shows ''That thereafter the Chicago and Southwestern Railway Company about 1876 conveyed the said Railway to the Chicago Rock Island and Pacific Railway Company which operated said railroad until on or about the first day of February 1939, and then abandoned the same. That on July 6, 1906, by Quit claim deed in Book 88, page 244 of said records Thomas E. Turney (single man) and on July 9, 1906 by Quit claim deed in Book 88 at page 245 Nathan P. Ogden and Jessie D. Ogden, his wife by said deed conveyed to John P. Broderick and Julia C. Broderick, his wife, the following tract of land: All that part of the Northeast Quarter of the Northwest Quarter of Section 20, Township 56, Range 31, which lies south of the Right of Way, Depot grounds and yards now owned and occupied by the C. R. I. P. Railway Company, as successors to the Chicago and Southwestern Railroad Company containing twelve acres.''

These quitclaim deeds were introduced in evidence and recite that they were made in correction ''of deeds executed by grantors to *Mildred T. Logan,* dated July 22nd, 1874, and intended to convey the lands above described.'' (Italics ours.) The deeds which the quitclaim deeds were intended to correct are not shown in the record.

The agreed statement of facts further shows that Ogden die on June 13, 1938 and that Turney died prior to February 1st. 1939. Plaintiff introduced in evidence quitclaim deeds dated November 14, 1939 and December 29, 1939, respectively, from the Turney heirs, purporting to convey to plaintiff ''all of their right, title and interest as children and heirs at law of Thomas E. Turney, deceased, of, in and to the strip of land formerly used by the Chicago, Rock Island and Pacific Railroad Company, (formerly the Chicago and Southwestern Railway Company) on over and across the North half of section Twenty (20) in Township. fifty-six (56) of Range thirty-one (31).'' Plaintiff also introduced in evidence a quitclaim deed procured after this suit was brought, from the Ogden heirs. The deed is not shown but the record recites that it purports to convey to her ''the land in question.''

Defendant introduced in evidence two deeds from the trustees of the Chicago, Rock Island and Pacific Railway Company. One of these deeds purports to convey the abandoned railroad right of way in question, but does not include the 924 feet beginning with the east line of the Northwest Quarter of the section in question. The other.

purports to convey said 924 feet. These deeds were dated respectively on the 12th day of April and the 9th day of August 1939.

Defendant also introduced in evidence a quitclaim deed from A. L. and J. M. Gribble, dated August 23rd, 1870, purporting to convey to the Chicago and Southwestern Railway Company "the right-of-way, one hundred feet in width, through and across the north half of the northwest quarter of Section Twenty (20), etc." The Gribbles are in no other way identified with the record title to the land in controversy, and the only evidence as to who they may have been is the testimony of defendant, who said: "People named Gribble were in possession of the north side of the right-of-way at the time the right-of-way was laid out."

There is no evidence as to when the railroad was constructed.

As a basis of her claim of title plaintiff relies upon the quit claim deeds from Ogden and Turney to her husband and herself, and the deeds from the heirs of Ogden and Turney purporting to convey the right of way to her.

Defendant, as a basis for the title he claims, relies upon the two deeds made to him from the trustees of the Chicago, Rock Island and Pacific Railway Company. He also relies upon the deed from the Gribbles to the Chicago and Southwestern Railway Company on the theory, apparently, that it constituted an outstanding title in a third person.

The First Amended Petition describes the land, the possession of which is sought to be recovered, as "All that part of the North half of the Northwest Quarter of Section 20, in Township 56, of Range 31, which lies South of the North line of what has heretofore been the right of way, depot grounds and yards, which prior to February 1st, 1939, were used and operated and occupied by the Chicago, Rock Island and Pacific Railway Company, over and along said tract of land, which said tract of land as so herein described was abandoned for any use for railroad purposes on or about the 1st day of February, 1939, and which abandonment has been continuous since said date."

Defendant contends that the description of the land in the petition and in the judgment, which generally follows the description contained in the petition, is "so indefinite, uncertain and meaningless that a valid judgment could not be rendered upon said description." We think this contention must be sustained. "Plaintiff's pleading must describe the premises sought to be recovered. The degree of certainty of the description necessary has been variously stated, but it is generally held that the description must be sufficient to enable the sheriff to know what land should be placed in plaintiff's possession in the event of his recovery. The declaration, petition, or complaint must describe the premises sought to be recovered. Formerly it was necessary to describe the premises with great accuracy, but under the modern practice the rule has been relaxed." [28 C. J., p. 912. See,

also, Wilkinson v. Lieberman, 37 S. W. (2d) 533; Livingston County v. Morris, 71 Mo. 603; Benne v. Miller, 149 Mo. 228, 245.] "To support the judgment it is necessary the description be of such a character that the sheriff, unaided by that kind of evidence aliunde calling for his conclusion or discretion in the nature of a judicial act, can locate the land, with the help of such existing things as recorded instruments, maps, monuments, and other objects which may be located by the data furnished by the description itself." [Hughes v. Allen (Ala.), 158 So. 307, 308; Mason v. Nour (Ga.), 8 S. E. 14; Driver v. Board of Directors, etc. (Ark.), 68 S. W. 26; Glazier Mountain Silver Mining Co. v. Willis (Colo.), 127 U. S. 471; Cottingham v. Hill (Ala.), 24 So. 552; 19 C. J., pp. 1106, 1107, 1108.]

The description contained in the petition does not refer to any existing right of way, yards or depot grounds, but lands that had theretofore been abandoned. There is no evidence that the abandoned lands now have any defined boundaries, such as fences, or that there is present any markers, or physical characteristics, by which they might be located. There may be of record in Clinton County some maps, plats or copies of surveys from which may be ascertained the boundaries of the abandoned lands, but none was introduced in evidence.

From what we have said the judgment must be reversed and the cause remanded. However, it is proper for us to pass upon other matters raised in the briefs which may arise at another trial. We approach this matter with some hesitancy on account of the unsatisfactory condition of the record in this case. Many material facts are not shown and some that are shown are so indefinite as to make any discussion of them rest on little more than speculation.

However, it would now appear that plaintiff is entitled to recover the possession of the South half of the right of way that lies north of her land, except possibly the east 924 feet of the former. We say this for the following reasons: It appears that the deed from Ogden and Turney to the Chicago and Southwestern Railway Company conveyed merely an easement over the land, the fee remaining in the grantors, their heirs and assigns. [Brown v. Weare et al., 152 S. W. (2d) 649; Boyce v. Mo. Pac. R. R. Co., 168 Mo. 583; Kellog v. Malin, 50 Mo. 496.] Ogden and Turney, when they conveyed to the Brodericks the land on one side of the right of way, having owned the land on both sides thereof, it will be presumed, in the absence of evidence to the contrary, intended to convey to the Brodericks to the middle line of the right of way. [Simpson v. Craig, 298 S. W. 360, 367; Brown v. Weare, et al., *supra*; 13 R. C. L., p. 119; Snoddy v. Bolen, 122 Mo. 479; Grant v. Moon, 128 Mo. 43; Sikes v. Railroad, 127 Mo. App. 326, 336; Baker v. City of St. Louis, 7 Mo. App. 429; 8 Am. Juris., p. 781; 29 C. J., pp. 540, 541; Paine v. Consumers Forwarding and Storage Co., 71 Fed. 626, 632.] The evidence is unsatisfactory as to what portion of the

length of the right of way that plaintiff is entitled. It seems to be assumed by the parties, in their briefs, that whatever title plaintiff and her husband acquired by the quitclaim deeds from Ogden and Turney is now owned by the plaintiff. Plaintiff's parol evidence tends to show that these deeds covered 12 acres across the south part of the north half of the northeast quarter of the northwest quarter of section 20, or across the south end of a 40 acre tract. However, no part of her land is south of the depot site proper, but is to the east thereof. Defendant's evidence is to the same effect. (The depot evidently was built on some part of the 1500 feet, conveyed by Ogden and Turney to the Chicago and Southwestern Railway Company, to the west of the west line of plaintiff's 12 acres.) It appears that the right of way in question is 200 feet in width and starts at a paved highway running along the east side of the northeast quarter of the northwest quarter of the section and runs west, from 1980 feet to a half a mile. It thus appears that a considerable part of the land, the possession of which plaintiff attempts to recover, is not touched by her 12 acres conveyed by the Ogden and Turney deeds to her and her husband. It is quite apparent from the record that Ogden and Turney conveyed much of the land that they owned along the right of way on both sides to others than the Brodericks prior to the abandonment of the right of way by the railroad company, although no deeds conveying this land appear in the record. Plaintiff's evidence shows that "about the west 1000 feet" (of the right of way) is where Mr. O'Connor owns land. Plaintiff's testimony also shows that there is a road north of that part of the right of way north of plaintiff's 12 acres. Whether the road is a public or private highway, or of other character, is not shown in the evidence. However, it appears from defendant's evidence, which is not disputed, that starting with the pavement on the east side of the northeast quarter of the northwest quarter of said section "Harts' have a farm" and next to Harts, on the west, defendant owns a tract "about 60 feet wide and 120 feet long . . . across the track" from plaintiff's 12 acres. Defendant's evidence is to the effect that his and Harts' tracks adjoin the right of way on the north. Evidently there is some kind of a road running along the right of way to the north and Harts' and defendant's tracks abut upon this road, or, possibly, the road is a private one and they own all the way to the right of way, free from any highway easement.

There is no evidence as to under what circumstances the railroad acquired an easement to the 924 feet of right of way lying immediately east of the east line of the northeast quarter of the northwest quarter of the section in question. Evidently the railroad owned the easement in this 924 feet when Ogden and Turney conveyed to the Brodericks. However, there is no evidence as to in what manner or under what circumstances, Ogden and Turney departed with the title to the land, or the railroad easement, along this 924 feet, if they did.

Plaintiff has shown no title to any part of the right of way lying toward the west of her 12 acres of land and none, definitely, to any part of the east 924 feet in question. The deeds to her from the heirs of Ogden and Turney conveyed no interest whatever in the right of way so far as there is anything in the record tending to indicate. [Brown v. Weare, *supra*.] As before stated, the oral testimony apparently shows that Ogden and Turney, or their heirs and assigns, had conveyed at least some of the land bordering on the right of way lying to the west of plaintiff's 12 acres of land. The evidence wholly fails to show how much land was conveyed, when, or under what circumstances. There is nothing in the record to indicate that plaintiff can recover possession of any part of the right of way west of her land.

It is quite apparent that the deeds from the trustees to the defendant conveyed no substantial title to the fee in the abandoned right of way, and that it does not appear that the Gribbles had any interest in the land that they sought to convey to the Chicago and Southwestern Railway Company. There is no evidence in the record to indicate that any right in the land covered by that deed was conveyed thereby. While defendant has shown no real title in himself, to the lands in controversy, it is well settled that in an action of this kind plaintiff must prevail upon the validity of his own title and not upon the weakness of the title of his adversary. [Brown v. Weare, *supra*, l. c. 655; Cullen v. Johnson, 29 S. W. (2d) 39, 46.]

The judgment is reversed and the cause remanded. All concur.