CALUMET NATIONAL BANK AS TRUSTEE UNDER TRUST NO. P–3362, DATED SEPTEMBER 1, 1986, Appellant (Plaintiff below),

v.

AMERICAN TELEPHONE & TELEGRAPH COMPANY, a New York Corporation and American Telephone and Telegraph Communications, Inc., Appellees (Defendants below).

No. 64S03–9706–CV–369.

Supreme Court of Indiana.

June 19, 1997.

See also 1997 WL 335018 and 160 Ind. App. 446, 312 N.E.2d 503.

Patrick J. Galvin, Carl N. Carpenter, Galvin, Galvin & Leeney, Hammond, Glenn J. Tabor, Blachly, Tabor, Bozik & Hartman, Valparaiso, for Appellant.

Henry J. Price, Price & Barker, Indianapolis, Nels J. Ackerson, The Ackerson Group, Chartered, Washington D.C., for Amici Curiae, Indiana Landowners with Land Underlying or Adjacent to Abandoned Railroad Right of Ways.

David C. Ford, General Counsel, Indianapolis,for Amicus Curiae, Indiana Farm Bureau.

Paul A. Rake, Sherry L. Clarke, Eichhorn & Eichhorn, Hammond, for Appellee.

### ON PETITION TO TRANSFER

SULLIVAN, Justice.

This case bears several similarities to another case we decide today, *Consolidated Rail Corp. v. Lewellen,* 682 N.E.2d 779 (Ind. 1997). In each case, a party contends that Conrail transferred to it certain interests in a railroad right-of-way where the evidence shows that the purported transfer did not occur until after Conrail abandoned the right-of-way. At issue in the *Lewellen* case is whether Conrail's putative transferee or the owners of the land adjacent to the right-of-way own the fee in the right-of-way. At issue here is whether Conrail's putative transferee committed trespass against the owners of land adjacent to the right-of-way.

### *Background*

The following events, set forth in chronological order, provide necessary background for understanding this dispute. Effective March 11, 1982, Consolidated Rail Corporation ("Conrail") abandoned a rail line running between Winamac and Crown Point pursuant to authority granted by the Interstate Commerce Commission (ICC). On January 1, 1984, Conrail and AT & T Communications, Inc. ("AT & T Communications"), entered a license agreement authorizing AT & T Com-

munications to install and operate a fiber optic communications system along railroad right-of-way between Harrisburg, PA, and Chicago, IL. (The Winamac–to–Crown Point right-of-way was not part of the Harrisburg–to–Chicago right-of-way.) AT & T Communications is a subsidiary of American Telephone & Telegraph Company ("AT & T"). AT & T and AT & T Communications are collectively referred to in this opinion as the "AT & T Parties."

Calumet National Bank, as Trustee of Trust P–3362 (the "Trust"), acquired certain property from an estate in 1987. The Trust property was adjacent on the northeast and southwest to a portion of a six-mile segment of land in Lake County that was in turn a portion of the Winamac–to–Crown Point right-of-way abandoned by Conrail in 1982.

Conrail and AT & T Communications amended their 1984 license agreement on October 26, 1988, to include land encompassing the six-mile segment.[1] In November, 1988, the AT & T Parties began installing survey stakes for its proposed route.

On February 28, 1989, Calumet National Bank, as Trustee, filed a complaint against Conrail to quiet title in the abandoned right-of-way. On May 19, 1989, the trial court entered a default judgment against Conrail, finding that Conrail had removed its tracks and abandoned its right-of-way and quieting title in fee simple in favor of the Trust. On June 12, 1989, the quiet title judgment was entered of record with the Lake County Recorder. The AT & T Parties installed a cable conduit on the right-of-way during the last week of July, 1989.

On November 2, 1989, and on December 10, 1990, the Trust filed and amended, respectively, a complaint against the AT & T Parties alleging trespass. AT & T placed its cable in service on or about December 19, 1989. AT & T's counsel represents that "[i]t is used on a daily basis by AT & T to provide telecommunications services to the public." R. 181. On January 10, 1992, AT & T Communications of Indiana, Inc., an Indiana sub-

---

**1.** While the trial court and Court of Appeals indicate that the date of this amendment was September 1, 1988, our inspection of the record suggests that October 26, 1988, is the correct date.

sidiary of AT & T, filed a complaint against the Trust to condemn the right-of-way where the cable had been installed. On October 3, 1994, the trial court entered an order (i) consolidating the trespass and condemnation actions; (ii) granting summary judgment in favor of AT & T and AT & T Communications on the issue of trespass; and (iii) condemning the property in question and naming appraisers.

The Trust appealed the trial court's determination that AT & T and AT & T Communications were not guilty of trespass.[2] The Court of Appeals affirmed. *Calumet Nat'l Bank v. American Tel. & Tel. Co.,* 654 N.E.2d 816 (Ind.Ct.App.1995). The Trust petitioned this Court to transfer. We will set forth additional facts as needed.

## Discussion

### I

■ To make out a cause of action for trespass in this case, the Trust must prove that it owns the land in question and that the AT & T Parties' entry upon it was unauthorized. *State ex rel. McPheron v. Beckner,* 132 Ind. 371, 375, 31 N.E. 950, 951 (1892) (unauthorized entry on the land of another constitutes trespass); *Roushlange v. Chicago & A.R. Co.,* 115 Ind. 106, 110, 17 N.E. 198, 200 (1888) (same).

The Trust begins its argument that it owns the abandoned right-of-way by contending that under the common law of this state, the railroad's abandonment of the right-of-way was sufficient to extinguish the railroad's interest in the property. We hold as much in our opinion today in *Lewellen,* at 784 and, in any event, the AT & T Parties do not contest this contention. Rather, the AT & T Parties argue that (a) the Trust did not become the owner of the property upon the extinguishment of Conrail's interest and (b) their own entry on the property for purposes of con-

structing the fiber optic cable was authorized by law.

### A

■ As we discuss in *Lewellen,* property law in Indiana provides that a railroad easement terminates upon abandonment by the railroad. *Lewellen,* 682 N.E.2d at 782. While at common law the question of whether a railroad easement had been abandoned required a finding as to the railroad's intent to abandon, the legislature removed this question from the common law in 1987 by its enactment of Ind.Code § 8–4–35–1 *et seq.* (1988) (the "Rights–of–Way Act").[3] *Id.* Indiana Code § 8–4–35–4(a) deems railroad rights-of-way abandoned if (i) the ICC issues a certificate authorizing abandonment and (ii) the railroad removes the rails, switches, ties, and other facilities from the right-of-way.

■ As mentioned under *Background, supra,* Conrail received the ICC authority to abandon the right-of-way at issue on March 11, 1982. The Trust put forth evidence establishing that Conrail dismantled the rails and ties no later than December, 1985. Conrail did not dispute this evidence. Applying Ind.Code § 8–4–35–4(a), Conrail's interest in the right-of-way was extinguished no later than December, 1985.

While the AT & T Parties do not contest that Conrail's interest in the right-of-way was extinguished no later than December, 1985, they do contest the Trust's contention that the fee simple interest in the right-of-way became vested in the Trust's predecessor-in-interest at that time. To understand the AT & T Parties' argument requires further analysis of the Rights–of–Way Act. Section 5 of the Act provides that once a railroad abandons its railroad right-of-way, "the railroad's interest vests in the owner of fee simple real property with a deed that

2. The condemnation litigation proceeded separately. *See Calumet Nat'l Bank v. American Tel. & Tel. Co.,* 647 N.E.2d 689 (Ind.Ct.App.1995), *trans. denied.*

3. Ind.Code § 8–4–35–1 *et seq.* (1988) was added to the Indiana Code by 1987 Ind. Acts 384 § 55. It remained in effect until May 10, 1995, when it was replaced by Ind.Code § 32–5–12–1 *et seq.* This change appears to have been a legislative

response to *Penn Central Corp. v. U.S. R.R. Vest Corp.,* 955 F.2d 1158 (7th Cir.1992), which held certain provisions of the Rights–of–Way Act unconstitutional for reasons not at issue in this case. The provisions of the Rights–of–Way Act implicated in this sentence of this opinion, Ind. Code § 8–4–35–4(a), today appear in substantially the same form as Ind.Code § 32–5–12–6(a)(2).

contains a description of the real property that includes the right-of-way." Ind.Code § 8–4–35–5. However, if no such deed exists, "the railroad's interest vests . . . in the owner of the adjoining fee. . . .from the center line of the right-of-way to the adjoining property line." *Id.* Sections 6 and 7 of the Act provide:

Sec. 6. (a) To establish record title upon an abandonment of a railroad right-of-way, an owner of fee simple real property in whom the railroad's interest vests under section 5 of this chapter may file an affidavit with the railroad, or with one holding the railroad's interest, stating:

(1) that the filer is the owner of fee simple real property in whom a railroad's interest has vested; and

(2) a legal description of the filer's property and a legal description of the portion of the right-of-way that has vested in the filer.

(b) The railroad shall, within one hundred eighty (180) days after receipt of the affidavit, execute and deliver to the fee simple owner who files under this section a quitclaim deed for the portion of the right-of-way described in the affidavit.

(c) The fee simple owner shall record the title and have it entered for taxation in the county where the right-of-way is located.

Sec. 7. (a) The railroad may charge the grantee of a deed under this chapter an amount not to exceed the reasonable costs to the railroad of processing, executing, and delivering the deed. The amount charged must not exceed one hundred dollars ($100).

(b) If a railroad no longer exists or does not deliver a quitclaim deed to the owner within the one hundred eighty (180) day period prescribed by section 6 of this chapter, the owner may record the affidavit to establish record title, if:

(1) the affidavit states that the railroad:

(A) no longer exists; or

(B) has failed to make delivery of a quitclaim deed; and

(2) the owner enters the affidavit for taxation in the county where the right-of-way is located.

Ind.Code § 8–4–35–6 and –7.[4]

■ The deed by which the Trust acquired its interest in the abandoned right-of-way does not contain "a description of the real property that includes the right-of-way." The AT & T Parties argue that at common law landowners whose deed did not contain any description of an adjacent right-of-way acquired no interest in the right-of-way upon abandonment thereof. As such, this argument continues, the interest of the Trust in the abandoned right-of-way here is not derived from common law but exists solely by virtue of Section 5 of the Rights–of–Way Act. And because the interest is created by statute, it is subject to all of the Act's terms and conditions—in particular, the affidavit and title recording provisions of Ind.Code § 8–4–35–6 and –7 set forth above. It is undisputed that the Trust (including its predecessors) neither filed the affidavits nor recorded any title contemplated by this section. The AT & T Parties maintain that because the Trust did not comply with the terms and conditions of sections 6 and 7 of the Rights–of–Way Act, it was not entitled to the benefits of section 5 of the Act. The Court of Appeals agreed with this analysis. *Calumet Nat'l Bank,* 654 N.E.2d at 820.

This court has never confronted the precise question of the interest, if any, of the owners of property adjacent to a railroad right-of-way upon abandonment in the absence of any deed describing real property that includes the right-of-way.[5] However, in

4. In *U.S. R.R. Vest,* the Seventh Circuit determined that the affidavit provisions of the Rights-of-Way Act deprived the railroad of property without due process of law. *U.S. R.R. Vest,* 955 F.2d at 1163. Amicus Indiana Farm Bureau makes the argument here that if the Act was unconstitutional in *U.S. R.R. Vest* because its operation deprived the railroad in that case of its property without due process of law, it also should be considered unconstitutional here as depriving the Trust of its property without due process of law. We need not address the constitutionality of the Rights–of–Way Act because we find that the statute did not serve to deprive the Trust of its property here.

5. The cases cited by both parties in support of their respective positions on this issue instead are cases that resolve quiet title disputes between the successors in interest of the original grantors

other jurisdictions, absent contrary evidence, courts presume a grantor intends to convey title to the middle line of a railroad right-of-way when the grantor conveys title to property abutting such right-of-way. *See e.g. Abbott v. Pearson,* 257 Ark. 694, 520 S.W.2d 204 (1975); *New Orleans & Northeastern R.R. v. Morrison,* 203 Miss. 791, 35 So.2d 68 (1948); *Broderick v. Tyer,* 239 Mo.App. 118, 187 S.W.2d 476 (1945); *Cuneo v. Champlin Refining Co.,* 178 Okla. 198, 62 P.2d 82 (1936); *Rio Bravo Oil Co. v. Weed,* 121 Tex. 427, 50 S.W.2d 1080 (1932); George W. Thompson, 6 *Thompson on Real Property,* § 3068 at 672 (John S. Grimes ed., 1962 Replacement) (citations omitted); Annotation, "Boundary under conveyance of land bordering on railroad right-of-way," 85 A.L.R. 404 (1933). Thus, upon abandonment of the railroad right-of-way, grantees hold title to the center of the right-of-way. *Broderick,* 187 S.W.2d at 479; *City of Columbia v. Baurichter,* 729 S.W.2d 475 (Mo.Ct.App.1987).

■ In light of such strong support to the contrary, we can not accept the AT & T Parties' argument that the Rights–of–Way Act, Ind.Code § 8–4–35–5, *created* a right in adjoining landowners that did not exist at common law. Rather, we conclude that the statute codified an established principle of common law: where there is no language in any of the relevant deeds describing real property that includes the right-of-way, the title of the owners of land abutting railroad rights-of-way runs to the center of the right-of-way. In this case, there is no language in any of the relevant deeds from which ownership of the right-of-way easement can be

inferred. Therefore, we conclude that, (i) prior to abandonment by Conrail, the title of the Trust's predecessors-in-interest ran to the center of the right-of-way, subject to the burden of the railroad's easement, and (ii) upon abandonment, that title was no longer subject to the burden of the easement. The Trust (or its predecessors-in-interest) did not have to file the affidavits or record the titles contemplated by Ind.Code § 8–4–35–6 to become owners of the right-of-way.[6]

**B**

The Court of Appeals determined that the enforceability of AT & T Communications' license to install a fiber optic system is governed by Ind.Code § 8–4–35–8, which provides:

> (a) The fee simple owner takes title under this chapter to the right-of-way subject to any *valid* communication, fiber optic, or cable television easement, license, or legal occupancy granted by the railroad before the date of recording of an affidavit under section 7 of this chapter or the recording of a quitclaim deed under section 6 of this chapter.

Ind.Code § 8–4–35–8 (1993)(emphasis added). The Court of Appeals concluded that the Trust took the interest in the right-of-way subject to the AT & T Parties' license because the Trust complied with neither sections 6 nor 7 of the Act and the Trust's quiet title action was subsequent to the amended license agreement between AT & T Communications and Conrail.

---

to the railroad and the successors in interest of the railroad. *Lewellen,* and our earlier decisions in *Hefty* and *Brown v. Penn Central Corp.,* required this Court to interpret the deed language describing real property that included the right-of-way in order to resolve a question as to fee simple ownership of the land upon which the right of way was located. *Lewellen,* at 781; *Hefty v. All Other Members of the Certified Settlement Class,* 680 N.E.2d 843 (1997); *Brown v. Penn Central Corp.,* 510 N.E.2d 641 (Ind.1987). In contrast, here we confront an issue of ownership where none of the deeds contain any language describing real property that included the right-of-way.

**6.** In support of this conclusion, we note that Ind.Code § 8–4–35–6 provides that "[t]o estab-

lish *record* title upon an abandonment of a railroad right-of-way, an owner ... *may* file an affidavit...." The reference to "record title" suggests that the provision serves to provide notice of ownership, not ownership itself. *Shirk v. Thomas,* 121 Ind. 147, 149, 22 N.E. 976, 976–977 (1889) (registration of deed is intended to provide notice and adds nothing to effectiveness of the conveyance). And the permissive nature of this language suggests that other means of establishing title are possible, *to wit,* the quiet title action brought by the Trust here. *City of Tell City v. Noble,* 489 N.E.2d 958, 961 (Ind.Ct. App.1986) ("The word 'may' ordinarily indicates a permissive condition and discretion.") (citation omitted), *trans. denied.*

■ The Trust and amici argue that the Court of Appeals, in attempting to construe the Rights–of–Way statute, misinterpreted Ind.Code § 8–4–35–8, by holding that the adjoining fee simple owner does not acquire an enforceable interest in the easement until obtaining record title to the easement pursuant to Ind.Code § 8–4–35–6 or Ind.Code § 8–4–35–7. We agree.

■ As discussed in part I–A, *supra,* a railroad's interest in a right-of-way easement is extinguished upon abandonment and vests in one holding a deed containing a description of the right-of-way, or if no such deed exists, as is the case here today, then in the adjoining landowners. *See* Ind.Code § 8–4–35–5. Accordingly, upon abandonment, Conrail had no interest in the right-of-way. The statute provides that an abutting landowner's title is subject to any *valid* communications or fiber optic easements or licenses granted by the railroad. Ind.Code § 8–4–35–8(a). But a license can be granted only by one who owns or has an interest in the land affected by the license. *See Norfolk Dredging Co. v. Radcliff Materials, Inc.,* 264 F.Supp. 399, 402 (E.D.Va.1967); *Engelhardt v. Gravens,* 281 S.W. 715, 718 (Mo.1926); 53 C.J.S. Licenses § 89 at 440 (1987); George W. Thompson, 1A *Thompson on Real Property* § 217 at 202 (John S. Grimes ed., 1980 Replacement). Accordingly, in order to be valid, a license granted by a railroad company to a communications company has to be granted while the railroad company still has an interest in the right-of-way to convey.

In the present case, it is undisputed by the AT & T Parties that Conrail abandoned the right-of-way not later than 1985. Furthermore, the parties do not dispute that the license agreement was amended to include the land at issue in this case on October 26, 1988, subsequent to the abandonment. At that point in time, the railroad had no interest in the right-of-way to license to AT & T Communications. This construction of the statute is consistent with the basic principles of property law as well as the purpose and policy of the Rights–of–Way statute.[7, 8]

## II

■ Before the trial court, the AT & T Parties took the position that inverse condemnation, and not trespass, was the proper remedy for the damages alleged by the Trust in this case. The trial court made no explicit ruling on this issue but instead, as described under *Background, supra,* granted summary judgment for the AT & T Parties on the trespass issue and then condemned the abandoned right-of-way property. Because we conclude that summary judgment on the trespass issue should have been entered in favor of the Trust, we remand this issue to the trial court for further consideration. We make two observations. First, as the AT & T Parties concede, inverse condemnation is not an exclusive remedy. *Indiana & Mich. Elec. Co. v. Whitley County Rural Elec. Membership Corp.,* 160 Ind.App. 446, 449, 312 N.E.2d 503, 505 (1974). *See also* George

7. In addition, our construction of the former Rights–of–Way statute is consistent with the current version of the Railroad Rights–of–Way statute, codified at Ind.Code §§ 32–5–12–1 to–15 (1995), which provides in relevant part:

(a) The vesting of a railroad's interest under section 10 of this chapter does not divest a valid public utility, communication, cable television, fiber optic, or pipeline easement, license, or legal occupancy granted by the railroad *before the date abandonment occurred.*
Ind.Code § 32–5–12–11(a)(emphasis added).

8. Indiana Code § 8–4–35–8(b) (1988) reads as follows:

(b) An abandonment and vesting of title under this chapter does not deprive a communication, fiber optic, or cable television company of the use of all or part of the right-of-way if, on

September 1, 1987, or at the time of abandonment and vesting (whichever is later):
(1) the company is occupying and using all or part of that right-of-way for the location and operation of its facilities; or
(2) the company has acquired an interest for use of all or part of the right-of-way.
In this case, abandonment occurred not later than December, 1985, making the reference date under this provision September 1, 1987. The parties do not dispute that the license agreement was amended to include the land at issue in this case on October 26, 1988. Accordingly, this subsection of the Act is not implicated in this case because on September 1, 1987, AT & T was not using that part of the right-of-way for the operation of its fiber optics system. However, facts that would trigger this subsection might produce a different result.

H. Genzel, Annotation, *Award of, or Pending Proceedings for, Compensation for Property Condemned, as Precluding Action for Damages Arising from Prior Trespasses Upon It,* 33 A.L.R.3d 1132 (1970). On the other hand, it might very well be that the condemnation award apparently already made in this case, *see Calumet Nat'l Bank,* 647 N.E.2d 689, encompassed any damages to which the Trust was entitled as a result of the AT & T Parties' trespass. We leave this determination for the trial court as it appears to be, at the least, a mixed question of law and fact.

### Conclusion

We grant transfer, vacate the opinion of the Court of Appeals pursuant to Ind.Appellate Rule 11(B)(3), order the trial court to grant summary judgment in favor of Trust on the issue of trespass, and remand for consideration of damages, if any.

SHEPARD, C.J., and DICKSON and SELBY, JJ., concur.

BOEHM, J., not participating.