Henry L. HOWARD, et al., Plaintiffs,

v.

**UNITED STATES, Defendant.**

No. 09–575L.

United States Court of Federal Claims.

May 6, 2011.

---

232

## ORDER

MARIAN BLANK HORN, Judge.

In this Rails to Trails takings case, pursuant to the Fifth Amendment to the United States Constitution, the defendant, the United States, has requested this court to certify several questions to the Indiana Supreme Court regarding issues of state law, pursuant to Rule 64 of the Indiana Rules of Appellate Procedure. *See* Ind. R.App. Proc. R. 64 (2011). The United States represents that "there are no controlling precedents concerning several potentially dispositive issues" in the above captioned *Howard* case before this court. The United States also has requested certification of questions to the Indiana Supreme Court in two other Rails to Trails takings cases filed in the United States Court of Federal Claims, *Macy Elevator, Inc. v. United States,* 97 Fed.Cl. 708 (2011) and *Hunneshagen Family Trust v. United States,* Case No. 09–504 (Fed.Cl.). The questions requested for certification in *Macy Elevator* and *Hunneshagen Family Trust* raise some of the same matters of Indiana law as the questions requested for certification by the United States in this case. As of the date of this Order, the trial Judge has not ruled on the motion for certification to the Indiana Supreme Court in *Hunneshagen Family Trust.* In a foot-

note to the court's opinion in *Macy Elevator,* the Judge indicated that she could find no controlling precedent on the dispositive issue in *Macy Elevator,* denied the defendant's motion for certification to the Indiana Supreme Court and decided the case with available precedent, as is discussed more fully below.

The plaintiffs oppose the request for certification in the above captioned *Howard* case. The plaintiffs argue that the Indiana Supreme Court cannot accept a question for certification from the United States Court of Federal Claims. The plaintiffs contend that Indiana Code § 33–24–3–6 (2010) lists the courts from which the Indiana Supreme Court has authority to accept certification questions.[1] The Indiana Code provides:

The supreme court may, by rule of court, provide that if:

(1) the Supreme Court of the United States, a circuit court of appeals of the United States, or the court of appeals of the District of Columbia determines that there are involved in any proceeding before the federal appellate court questions or propositions of the laws of Indiana that are determinative of the proceeding; and

(2) there are no clear controlling precedents in the decisions of the supreme court;

the federal appellate court may certify the questions or propositions of the laws of Indiana to the supreme court for instructions concerning the questions or propositions of state law, and the supreme court, by written opinion, may answer.

Ind.Code § 33–24–3–6. The plaintiffs correctly assert that the words of the Indiana Code literally do not provide for certification from trial courts such as federal District Courts or the United States Court of Federal Claims. This argument, however, ignores the Indiana Supreme Court's inherent constitutional authority, the language of Rule 64 of the Indiana Rules of Appellate Procedure, and the Indiana Supreme Court's practice of accepting certified questions from federal District Courts. *See* Ind. Const. art. 7, §§ 1,

1. Indiana Code § 33–24–3–6 was enacted in 2004 as a revision to the original 1971 statute,

with substantially similar provisions.

4; Ind. R.App. Proc. R. 64; *see also e.g., Green v. Ford Motor Co.,* 942 N.E.2d 791 (Ind.2011) (accepting a question certified by the United States District Court for the Southern District of Indiana); *Cantrell v. Morris,* 849 N.E.2d 488 (Ind.2006) (accepting a question certified by the United States District Court for the Northern District of Indiana); *Gribben v. Wal–Mart Stores, Inc.,* 805 N.E.2d 381 (Ind.2004) (accepting two questions for certification from the United States District Court for the Southern District of Indiana).

Indiana Rule of Appellate Procedure 64 provides:

> The United States Supreme Court, any federal circuit court of appeals, or any federal district court may certify a question of Indiana law to the Supreme Court when it appears to the federal court that a proceeding presents an issue of state law that is determinative of the case and on which there is no clear controlling Indiana precedent.

Ind. R.App. Proc. R. 64(A). Rule 64 provides for certification from the federal District Courts, which are not included in Indiana Code § 33–24–3–6. Indiana Rule of Appellate Procedure 64, thus, represents a more expansive certification rule than strictly indicated by the Indiana statute. *Compare* Ind.Code § 33–24–3–6, *with* Ind. R.App. Proc. R. 64.[2]

In *Mosley v. State,* 908 N.E.2d 599 (Ind. 2009), the Indiana Supreme Court explained its authority to issue advisory opinions, citing the judicial power "conferred on the courts by article 7, section 1 of the Indiana Constitution." *Id.* at 603; *see also Tyson v. State,* 622 N.E.2d 457, 461 (Ind.1993) ("The Indiana Appellate Rules are but rules of procedure. This Court [the Indiana Supreme Court] retains its constitutional authority to act notwithstanding those rules when the necessity arises." (citing *Troue v. Marker,* 253 Ind. 284, 252 N.E.2d 800 (1969))). It is in this context that the Indiana Supreme Court has accepted for certification and issued opinions

answering questions proffered by United States District Courts.

This court recognizes that the United States Court of Federal Claims is not specifically listed in Indiana Code § 33–24–3–6 or in Indiana Rule of Appellate Procedure 64, among the courts from which certification is authorized by the statute. Rule 1 of the Indiana Rules of Appellate Procedure, however, states: "These Rules shall govern the practice and procedure for appeals to the Supreme Court and the Court of Appeals. The Court may, upon the motion of a party or the Court's own motion, permit deviation from these Rules." Ind. R.App. Proc. R. 1. Based on Rule 1, this court urges the Indiana Supreme Court to adopt the argument of the United States that Rule 64 indicates an intention on the part of the Indiana Supreme Court to make the certification procedure available during the trial phase of federal litigation and that the inherent power of the Indiana State Courts allows the addition of the United States Court of Federal Claims to the list of courts from which the Indiana Supreme Court can accept certification requests for clarification on issues of Indiana state law.

 Rule 64 explicitly identifies the federal District Courts as eligible to certify questions to the Indiana Supreme Court. The United States Court of Federal Claims is a federal trial court which hears cases on specified areas of the law, from all geographical areas of the United States, including in the subject matter areas of takings pursuant to the Fifth Amendment to the United States Constitution, at issue in the above captioned *Howard* case. The court also shares concurrent jurisdiction with the federal District Courts, on subject areas such as tax and hears claims on matters such as government contracts, intellectual property, and military and civilian pay. This court and the federal District Courts both have been given jurisdiction by the United States Congress to address property rights in Rails to Trails takings cases, albeit based on separate causes of action, in the federal District

---

**2.** The only "Historical Note" on Rule 64 states: "Revised Appellate Rule 64 is analogous, in part,

to former Appellate Rule 15."

Courts as quiet title actions and in the United States Court of Federal Claims as takings cases pursuant to the Fifth Amendment to the United States Constitution. Permitting certification from the Court of Federal Claims is particularly important in light of the fact that the Court of Federal Claims has exclusive jurisdiction over takings claims under the Fifth Amendment in excess of $10,000.00, pursuant to the Tucker Act, 28 U.S.C. § 1491 (2006), and these cases require application of state law to resolve issues of liability. *See Cermak v. Babbitt,* 234 F.3d 1356, 1360 (Fed.Cir.2000), *cert. denied,* 532 U.S. 1021, 121 S.Ct. 1961, 149 L.Ed.2d 756 (2001) (affirming District Court for the District of Minnesota's transfer of takings case demanding $50,000.00 in compensation to the United States Court of Federal Claims because "regional district courts do not have jurisdiction over claims for compensation greater than $10,000.00; those claims must be brought in the Court of Federal Claims" (citing 28 U.S.C. § 1346)); *see also Preseault v. United States,* 100 F.3d 1525, 1533–34 (Fed.Cir.1996) (rejecting contention that National Trails System Act, 16 U.S.C. § 1241 *et seq.,* could redefine state property rights and applying Vermont law to determine the nature of the relevant property interests). Moreover, like decisions in the federal District Courts, appeals from decisions issued by the United States Court of Federal Claims are appealed to a United States Circuit Court of Appeals and then to the United States Supreme Court. Permitting certification to the Indiana Supreme Court from the United States Court of Federal Claims in the above captioned *Howard* case would comport with the spirit of the Indiana Supreme Court's interpretation of its jurisdiction to accept federal trial court applications for certification from federal trial courts, in appropriate cases, pursuant to Rules 1 and 64 of the Indiana Rules of Appellate Procedure.

Each of the 128 plaintiffs in the above captioned *Howard* case is a fee simple owner of real property in Cass or Pulaski County, Indiana. When the plaintiffs purchased their property, their respective titles were encumbered by railroad rights of way which had been granted to traverse over their properties by deed, prescription, or condemnation.

The plaintiffs allege that converting the rights of way to a recreational trail by operation of the National Trails System Act, 16 U.S.C. § 1241 *et seq.* (2006), effected a taking of their property.

In brief, the 1899 deed granted by Medary M. and Elsa L. Hathaway, conveyed to the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company and "its successors and assigns forever" an easement over a portion of the grantors' property. The deed reads in relevant part: "A strip of land. Fifty (50) feet in width on the north side of the center line of the [railroad] ... having a length of sixteen hundred and thirty-five (1635) feet, be the same more or less, and it is expressly agreed and understood that this conveyance is made to the grantee herein and its assigns for the purpose of maintaining a line of rail way and should the same at any time cease to be used for said purpose, then and in that case the title to the land herein conveyed shall immediately revert to the grantor herein or his assigns...." Other acquisitions were accomplished by condemnation and by prescriptive easement.

Various railroads owned the rights of way at issue in this case after construction first began in the late 1800s. In July 2003, A & R Line, Inc. (A & R) owned the rights of way. The rights of way have not been used for rail service since September 16, 2002. On July 31, 2003, A & R filed with the United States Department of Transportation, Surface Transportation Board (STB) a Petition for Exemption to Abandon the railroad line. The Indiana Trails Fund, Inc. (Trails Fund) subsequently filed a Public Use Conditions and Trail Use Request with the STB, and A & R agreed to negotiate with the Trails Fund for trail use of the 21–mile right of way. On November 18, 2003, the STB issued a Notice of Interim Trail Use (NITU). The effect of the NITU was to open a period for A & R and the Trails Fund to reach an agreement for interim trail use of the rights of way, "subject to possible future reconstruction and reactivation of the right-of-way for rail service...." According to the defendant, if a railway and a trail manager are able to reach an agreement, the STB retains jurisdiction over the line and abandonment of the line is

forestalled. A & R and the Trails Fund reached an agreement for interim trail use and A & R transferred ownership of the right of way, subject to the requirements of 16 U.S.C. § 1247(d), to the Trails Fund by quitclaim deed, which was executed November 29, 2005. From August 3, 2004 to the present, the railroad line has been used as a public recreational trail.

The issue presented in the above captioned *Howard* case in the United States Court of Federal Claims is whether, when the United States issued the NITU and authorized recreational trail use of the former railroad rights of way running through the plaintiffs' lands, the United States effected a taking for which the plaintiffs should be allowed to seek just compensation under the Fifth Amendment to the United States Constitution. *See Preseault v. United States,* 100 F.3d at 1529. To reach a decision, this court must determine whether, under Indiana law, railbanking with interim trail use is within the scope of the easements granted to the railroad company under the Hathaway deed and the easements acquired by prescription and condemnation. *See id.* at 1533.

The defendant has requested that this court certify three questions to the Indiana Supreme Court: (1) under Indiana law, are railbanking and interim trail use, pursuant to 16 U.S.C. § 1247(d), uses that are within the scope of the easements acquired by the railroad companies either by prescription, condemnation, or the deed at issue; and, if either is not within the scope of the easements originally acquired, is railbanking with interim trail use a shifting public use; (2) is a railroad right of way, that has been railbanked pursuant to 16 U.S.C. § 1247(d), considered abandoned under Indiana Code §§ 32–23–11–6 (2010), 32–23–11–7 (2010), and 32–23–11–8 (2010); and (3) under Indiana law, does an adjoining landowner, whose deed does not contain a description of the real property that includes the right of way, as defined in Indiana Code § 32–23–11–10 (2010), own a property interest in a railroad right of way, absent a finding of abandonment.

Rule 64 provides for requests for certification "when it appears to the federal court

that a proceeding presents an issue of state law that is determinative of the case and on which there is no clear controlling Indiana precedent." Ind. R.App. Proc. R. 64(A). This court does not believe it necessary to certify questions two and three because it appears that controlling Indiana statutes and precedent are dispositive on those issues. As to question two, Indiana Code § 32–23–11–7 states that: "A right-of-way is not considered abandoned if the Interstate Commerce Commission or the United States Surface Transportation Board imposes on the right-of-way a trail use condition under 16 U.S.C. § 1247(d)." Ind.Code § 32–23–11–7. Question three appears to have been answered in *Calumet National Bank v. American Telephone & Telegraph Co.,* 682 N.E.2d 785 (Ind.1997). In *Calumet National Bank,* interpreting a substantially similar predecessor to Indiana Code § 32–23–11–10 (Indiana Code § 8–4–35–5, *repealed by* Ind. Pub.L. 40–1995, § 5), the court found that prior to abandonment, "the statute codified an established principle of common law: where there is no language in any of the relevant deeds describing real property that includes the right-of-way, the title of the owners of land abutting railroad rights-of-way runs to the center of the right-of-way." *See Calumet Nat'l Bank v. AT & T,* 682 N.E.2d 785 at 789–90. Upon abandonment that title was no longer subject to the burden of the easement. *Id.* at 790.

■ The answer to the defendant's question one, which asks whether interim trail use with railbanking is within the scope of the relevant easements, is "an issue of state law that is determinative of the case" before this court on which this court believes "there is no clear controlling Indiana precedent." Ind. R.App. Proc. R. 64(A). Therefore, this federal trial court would benefit from further guidance from the Indiana Supreme Court.

■ A three-part inquiry to determine liability in Fifth Amendment takings cases involving the conversion of railroad rights of way to a recreational trails, *see* 16 U.S.C. § 1247(d), was established for this Circuit by the United States Court of Appeals for the Federal Circuit, and is precedential for the

United States Court of Federal Claims. The Federal Circuit wrote:

> (1) who owned the strips of land involved, specifically did the Railroad ... acquire only easements, or did it obtain fee simple estates; (2) if the Railroad acquired only easements, were the terms of the easements limited to use for railroad purposes, or did they include future use as public recreational trails; and (3) even if the grants of the Railroad's easements were broad enough to encompass recreational trails, had these easements terminated prior to the alleged taking so that the property owners at that time held fee simples unencumbered by the easements.

*Preseault v. United States,* 100 F.3d at 1533; *see also Ellamae Phillips Co. v. United States,* 564 F.3d 1367, 1373 (Fed.Cir.2009). The answer to each of these questions is governed by state law. *See Preseault v. United States,* 100 F.3d at 1530, 1534; *see also Preseault v. Interstate Commerce Comm'n,* 494 U.S. 1, 20, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990) (O'Connor, J., concurring).

■■■ Of the three-part *Preseault* inquiry, question (2), immediately above, regarding the scope of the easements, requires resolution in the above captioned *Howard* takings case. *See Preseault v. United States,* 100 F.3d at 1533. The parties in *Howard* have agreed that the particular properties at issue conveyed only easements to the railroad. Specifically, the parties have stipulated that the Hathaway deed conveyed only an easement. With respect to rights of way acquired by prescription, under Indiana precedent, "[i]t is also the general rule that where a railroad right of way is acquired by prescription, the company takes only an easement." *Meyer v. Pittsburgh, Cincinnati, Chi. & St. Louis Ry., Co.,* 63 Ind.App. 156, 113 N.E. 443, 446 (1916). Additionally, under Indiana precedent, a railroad right of way taken by condemnation acquires only an easement. *See Hoffman v. Zollman,* 49 Ind. App. 664, 97 N.E. 1015, 1017 (1912) ("It is the settled law of this state that a railroad company by condemnation proceedings for a right of way acquires only an easement in the land appropriated. If a railroad company only acquires an easement in land by condemnation proceedings, it must necessarily follow that it could secure no greater interest by prescription.") (citations omitted). In the parties' Joint Submission, the plaintiffs indicated that "the alternative argument of abandonment prior to the alleged taking is not an argument asserted in this case." *See also* Ind.Code § 32–23–11–6 (abandonment occurs when STB issues "a certificate of public convenience and necessity relieving the railroad of the railroad's common carrier obligations" and either rails, switches, and ties are removed from the right of way making it unusable for rail traffic or 10 years pass). Therefore, an outcome determinative issue in the *Howard* case before this federal trial court is whether, under Indiana law, the terms of the easements were limited to use for railroad purposes, or included future use as public recreational trails. *See Preseault v. United States,* 100 F.3d at 1533.

As noted above, the plaintiffs oppose certification regarding whether, the easements at issue include in their scope use as public recreational trails, asserting that the question is clearly addressed by Indiana law. The plaintiffs argue it is clear that the easements at issue, obtained by condemnation, prescription, and the Hathaway deed, are limited to railroad purposes which do not include use as recreational trails or railbanking. In support of their argument, the plaintiffs cite cases including *Meyer v. Pittsburgh, Cincinnati, Chicago & St. Louis Railway Co.,* 113 N.E. at 446, 447 and *Hoffman v. Zollman,* 97 N.E. at 1017, the holdings of which address the nature of the railroad's property right rather than its scope. The plaintiffs fail to cite any Indiana state cases regarding the scope of an easement granted for railroad purposes, relying instead on an unpublished federal District Court case. *See Schmitt v. United States,* No. IP 99–1852–Y/S, 2003 WL 21057368 (S.D.Ind. Mar. 5, 2003).

Subsequent to the original briefing, the plaintiffs submitted, as supplemental authority, the recent decision in *Macy Elevator, Inc. v. United States,* 2011 WL 1319026. In *Macy Elevator,* a case also before the United States Court of Federal Claims, the defendant had requested that the court certify to

the Indiana Supreme Court, among other questions, the question of whether recreational trail use with railbanking is within the scope of a railroad easement under Indiana law. *See* Defendant's Cross Motion and Response to Motion for Summary Judgment on Liability and Motion to Certify Questions to the Supreme Court of Indiana, *Macy Elevator, Inc. v. United States*, Case No. 09–515 (Fed.Cl. Sept.3, 2010). In the *Macy Elevator* opinion on the merits, the court indicated: "[W]hile the Indiana Supreme Court has not expressly examined the question of whether a change from railroad to recreational trail use is permitted by a railroad purpose easement, Indiana does possess an instructive body of law on whether changed uses are consistent with easements in other contexts." *Macy Elevator, Inc. v. United States*, 97 Fed.Cl. at 728–29. The trial court, therefore, denied defendant's certification request in the following footnote:

> While Indiana does have a statute allowing the certification of questions of state law to the Supreme Court of Indiana, the statute provides for certification only by "the Supreme Court of the United States, a circuit court of appeals of the United States, or the court of appeals of the District of Columbia." Ind.Code § 33–24–3–6 (2008). Although the defendant notes that Rule 64(A) of the Indiana Rules of Appellate Procedure allows for certification by a federal district court, this court, having not been specifically named in the relevant statute or rule, does not appear to possess the ability to certify questions to the Indiana Supreme Court. Further, as discussed below, the court finds that sufficient Indiana precedent exists to render a judgment based on state law. For these reasons, the government's motion to certify question of state law to the Indiana Supreme Court is **DENIED.**

*Macy Elevator, Inc. v. United States*, 97 Fed.Cl. at 718 n. 15.

Although the court in *Macy Elevator* denied the certification request by the United States, and acknowledged that no direct Indiana precedent on point existed, the court, nonetheless, addressed the scope of the railroad easements in its opinion. Without controlling precedent on which to rely in order to determine the scope of the railroad easements at issue in *Macy Elevator*, the Judge reasoned by analogy, and relied on cases that deemed interfering with the flow of a stream across an easement, cutting and selling ice from a right of way, removing and selling gravel and sand from a right of way, and excavating so as to cause the collapse of a coal mine, uses outside the scope of the relevant easements. *See Macy Elevator, Inc. v. United States*, 2011 WL 1319026, at *20–21 (citing *Smith v. Holloway*, 124 Ind. 329, 24 N.E. 886 (Ind.1890); *Julien v. Woodsmall*, 82 Ind. 568 (1882); *Pittsburgh, Ft. Wayne & Chi. R.R. v. Swinney*, 97 Ind. 586 (1884); and *Cleveland, Cincinnati, Chi., & St. Louis Ry. Co. v. Simpson*, 182 Ind. 693, 104 N.E. 301 (1914)). The *Macy Elevator* court also relied on *Pittsburgh, Cincinnati, Chicago & St. Louis Railway Co. v. Lamm*, 61 Ind.App. 389, 112 N.E. 45, 47 (1916) in which the *Pittsburgh, Cincinnati, Chicago & St. Louis Railway* court found that the railroad had the right to improve or repair the railroad bed, so long as improvements by the railroad on the railroad's easement cause no additional burden to the fee owner; *Cox v. Louisville, New Albany, and Chicago Railroad Co.*, 48 Ind. 178, 191–92 (1874), in which the Cox court found that railway use was not within the scope of an easement originally created and used for a public street; *Fox v. Ohio Valley Gas Corp.*, 250 Ind. 111, 235 N.E.2d 168, 172–173 (1968) (allowing a utility to lay pipe under a public right of way on a road), and *Ritz v. Indiana and Ohio R.R., Inc.*, 632 N.E.2d 769, 775–76 (Ind.Ct.App. 1994) (a quiet title action similarly condoning a utility's use of the public railroad right of way). *See Macy Elevator, Inc. v. United States*, 97 Fed.Cl. at 729.

The reliance on these precedents in *Macy Elevator* is by no means definitive because the issue of how the scope of a railroad easement can be expanded over time by operation of the doctrine of shifting public uses remains unsettled. In *Consolidated Rail Corp., Inc. v. Lewellen*, 682 N.E.2d 779 (Ind.1997), an action to quiet title in a portion of an abandoned railway corridor, the Indiana Supreme Court did not reach the issue of the shifting public uses doctrine. *Id.*

at 783 n. 6. The doctrine of shifting public uses operates to permit, without additional compensation, the use of an easement not contemplated by the parties at the time the easement was granted, effectively broadening the scope of the easement. *See Fox v. Ohio Valley Gas Corp.*, 235 N.E.2d at 172–73. The shifting public uses doctrine, however, has been accepted in the public highway context in Indiana to justify the uncompensated use of an easement beyond the terms of its original grant. *See id.* ("With the growth of population, advancement of commerce and new inventions, society must adjust itself from existing conditions to growing and changed conditions and specifically to new means of transportation. A dedication of land for highway purposes when made is deemed to comprehend not only specific uses in the minds of the parties at the time, but also those developed and invented, which fall into the category of transportation in the future. Industry has found it more feasible, for example, to move oil or gas through pipe lines in many instances, rather than by truck on the surface along the highways. Courts must recognize these advances in the science of transportation."). After *Fox*, the shifting public uses doctrine was applied to find that use by a utility was within the scope of a railroad right of way. *See Ritz v. Ind. & Ohio R.R., Inc.*, 632 N.E.2d at 775–76 (citing *Fox v. Ohio Valley Gas Corp.*, 235 N.E.2d at 168).

Although the Indiana Supreme Court has addressed, with differing results, whether various actions by various entities are within the scope of railroad easements on Indiana property, the Indiana Supreme Court has not addressed whether recreational trail use with railbanking can be considered within the scope of railroad easements under Indiana law. This court notes that interpretation of various deeds, under the laws of different states, has led to a split in other jurisdictions regarding whether conveyances which grant railroads rights of way encompass use as recreational trails with railbanking as within the scope of the easements. In cases before the United States Court of Appeals for the Federal Circuit, the Federal Circuit has found a Notice of Interim Trail Use to be a taking because recreational trail use was not within the scope of a railroad easement. *See, e.g., Toews v. United States*, 376 F.3d 1371, 1379 (Fed.Cir.), *reh'g denied,* (Fed.Cir.2004) ("[I]n California a public transportation easement defined as one for railroad purposes is not stretchable into an easement for recreational trail and linear park...."); *Preseault v. United States*, 100 F.3d at 1550 (under Vermont law, establishment of a public recreational trail "could not be justified under the terms and within the scope of the existing easements for railroad purposes"); *Rogers v. United States*, 90 Fed.Cl. 418, 432–33 (2009) (NITU effected taking because parties could not have contemplated use as a public recreational trail with railbanking at the time of deed and under Florida law "the scope of an easement does not increase with time...."). By contrast, at least two state Supreme Courts have concluded that recreational trail use is within the scope of an easement originally granted to a railroad as a right of way. *See Moody v. Allegheny Valley Land Trust*, 601 Pa. 655, 976 A.2d 484, 490–92 (2009) (interim trail use and railbanking are consistent with easement granted to railroad for right of way, "for the use and purposes of said Road" under Pennsylvania law); *Chevy Chase Land Co. v. United States*, 355 Md. 110, 733 A.2d 1055, 1072–79 (1999) (when right of way was granted to a railroad "in general terms," use as a recreational trail was consistent with the grant to a public service corporation like a railroad under Maryland law).

Given the importance to property owners in the State of Indiana of whether recreational trail use is within the scope of a railroad easement, and based on the split in decisions by various courts which have considered the issue, not including the Indiana State Courts, guidance from the Indiana Supreme Court would be welcome. If the Indiana Supreme Court does not grant the request to accept the certified question, this court, nonetheless, will strive to apply available precedent as best it can, consistent with existing Indiana law, in order to resolve the issues presented.

## CONCLUSION

For the reasons discussed above, this court believes it is appropriate to forward the fol-

lowing question submitted by the United States for certification to the Indiana Supreme Court in order to permit the Indiana Supreme Court to provide further and more precise direction with respect to the disposition of lands within its state. Pursuant to the inherent powers of the Indiana State Courts and in conformance with the spirit of Rules 1 and 64 of the Indiana Rules of Appellate Procedure, this court respectfully requests the Indiana Supreme Court to address the following question:

> Under Indiana law, are railbanking and interim trail use pursuant to 16 U.S.C. § 1247(d) uses that are within the scope of the easements acquired by the railroad companies either by prescription, condemnation, or the deed at issue; and if either is not within the scope of the easements originally acquired, is railbanking with interim trial use a shifting public use?

This court does not intend by its phrasing of the question to restrict the Indiana Supreme Court's consideration of any issues raised by this request. This court also acknowledges that the Indiana Supreme Court, at its discretion, of course, may reformulate the question in the best interests of clarifying state law.

